

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00438-CV

**SHOPOFF ADVISORS, LP**,
Appellant

v.

**ATRIUM CIRCLE, GP**, Atrium Winn, LLC, Atrium Kavoian, LLC, Copperfield Square,
Copperfield Winn, LLC, Copperfield Kavoian, LLC, Imperial Airport, Imperial Winn, LLC,
Imperial Kavoian, LLC, Crystal Springs Partners, LLC, Commerce Office Park – One LP,
and Universal Square, LP,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-00676
Honorable Antonia Arteaga, Judge Presiding[1]

### OPINION ON APPELLANT'S MOTION FOR REHEARING

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: December 27, 2019

REVERSED AND RENDERED

On July 10, 2019, we issued an opinion and judgment in this appeal. *See Shopoff Advisors,*

*L.P. v. Atrium Circle, G.P.*, No. 04-18-00438-CV, 2019 WL 2996977 (Tex. App.—San Antonio

July 10, 2019, no pet. h.). Appellant Shopoff Advisors, LP ("Shopoff") then filed a motion for

---

[1] The Honorable Antonia Arteaga signed the trial court's order denying the motion to dismiss pursuant to the Texas Citizens Participation Act. The Honorable Peter Sakai presided over the hearing on the motion to dismiss.

rehearing. After requesting a response, we grant Shopoff's motion for rehearing, withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

Shopoff appeals from the trial court's interlocutory order denying its motion to dismiss filed pursuant to the Texas Citizens Participation Act ("TCPA"), also known as Texas's anti-SLAPP statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011.[2] Shopoff contends the trial court erred in denying its motion because the claims brought by appellees (collectively referred to as "Atrium") relate to the exercise of Shopoff's right to petition. We reverse and render.

## BACKGROUND

The dispute between Shopoff and Atrium is complicated and relates to multiple legal proceedings. It began in February 2016 when Shopoff failed to close on a real estate transaction. Shopoff had agreed to buy six properties from Atrium for $35,600,000.00 and had placed $2.5 million into an escrow account at First American Title Co. ("First American"). After Shopoff did not close on the transaction, Atrium argued that Shopoff had breached their agreement and forfeited the escrow money. The next month, March 2016, Shopoff was ready to close and sued Atrium for specific performance, demanding Atrium sell the properties to Shopoff. Shopoff also filed lis pendens[3] on the properties. Atrium counterclaimed, and the case was referred to arbitration.

---

[2] Since the filing of the underlying lawsuit, the Legislature amended the TCPA. However, the amendments apply only to an action filed on or after September 1, 2019. An action filed before September 1, 2019 is governed by the law in effect immediately before September 1, 2019. As the underlying lawsuit was filed before September 1, 2019, the 2019 amendments to the TCPA do not apply, and the TCPA as it existed immediately before September 1, 2019 is quoted in this opinion. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011), amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499, 2499–500 (the version at issue in this opinion); *see also* Act of May 20, 2019, 86th Leg., R.S., ch. 378, H.B. 2730, §§ 1–9, 2019 Tex. Gen. Laws __, __ (the 2019 amendments); Act of May 20, 2019, 86th Leg., R.S., ch. 378, H.B. 2730, §§ 11–12, 2019 Tex. Gen. Laws __, __ (providing that a suit filed before the amendments become effective "is governed by the law in effect immediately before that date").

[3] The filing of a notice of lis pendens in the real property records notifies all persons that the real property is the subject matter of litigation and that any interests acquired during the pendency of the suit are subject to its outcome. *See* BLACK'S LAW DICTIONARY 950 (Bryan Garner, West 8th ed. 2004).

On March 29, 2017, a year later, the arbitrators issued their final award, determining that $2,006,100.00 of the $2.5 million on deposit with First American should be distributed to Atrium. The rest should be distributed to Shopoff. The arbitrators further ordered the parties to "promptly execute all documents required by First American Title Company to cause the release of such $2.5 million in accordance with this Award (and in no event more than three business days following receipt from the title company of such documents)." Shopoff was also ordered to "release all Notices of Lis Pendens from the real property records where such notices were filed for record within seven (7) calendar days from the date of this Award."

On April 3, 2017, Atrium's attorney sent a letter via email to the escrow officer at First American demanding $2,006,100.00 of the escrow money be released to Atrium. Attached to the email was the arbitrators' final award. On April 4, 2017, Shopoff's counsel sent an email to the escrow officer stating that the "award will be challenged in Stare [sic] District Court." Shopoff's counsel instructed the escrow officer to "not release any funds until you have a final, nonappealable judgment from a court of last resort." The escrow officer then emailed Atrium's attorney the following:

> We have been advised by counsel for Shopoff that the arbitration award will be challenged and, as such, we are not in a position to release the funds at this time.

On April 12, 2017, the trial court signed a final judgment confirming the arbitration award. The final judgment ordered the parties to provide a copy of the judgment to First American within three days. It also ordered the parties to "promptly execute all documents required by First American Title Company to cause the release of such $2.5 million in accordance with the Final Award and this Final Judgment, and to return such documents to First American" within fifteen business days of receiving the documents from First American. With respect to the notices of lis

pendens filed by Shopoff, the final judgment ordered that the notices of lis pendens "are hereby cancelled, released, and vacated."

On April 14, 2017, Shopoff filed a "Motion to Approve Deposit in Lieu of Supersedeas Bond," requesting that the trial court set the amount of cash Shopoff needed to deposit to supersede the final judgment. On April 17, 2017, Shopoff filed its notice of appeal, stating that it intended to appeal the trial court's final judgment. Shopoff's appeal of the trial court's final judgment was assigned Appeal No. 04-17-00241-CV in this court.

Six months later, on October 5, 2017, Atrium filed a "Motion to Enforce and Collect Judgment, for Turnover Order, Motion for Sanctions, and Motion to Require Supersedeas or Cash Deposit in Lieu of Supersedeas." According to Atrium, Shopoff had never set its motion to approve deposit in lieu of supersedeas bond for a hearing; thus, Shopoff had never superseded the judgment. Atrium also complained that Shopoff had not released the notices of lis pendens on Atrium's properties or executed the documents necessary to release the funds in escrow. Thus, Atrium argued it was entitled to enforcement and collection of the judgment.

On November 28, 2017, Shopoff filed a "Notice of Filing Deposit in Lieu of Supersedeas Bond," explaining that it had filed a "Net Worth Affidavit." The affidavit affirmed its net worth to be $218,630.00; thus, pursuant to Texas Rule of Appellate Procedure 24.1(a)(3), Shopoff deposited with the trial court clerk the sum of $109,315.00, or one-half of its net worth.

The next day, the trial court heard Atrium's motion to enforce the judgment. After hearing testimony, the trial court took the matter under advisement. On December 22, 2017, the trial court signed an order granting Atrium's motion to the extent it ordered Shopoff to execute a release of each of the lis pendens previously filed. Five days later, Atrium filed a motion for contempt,

arguing Shopoff had not complied with the trial court's order. That same day, the trial court issued a show cause order, ordering Shopoff to appear on January 9, 2018.[4]

On January 2, 2018, Shopoff filed an original mandamus proceeding in this Court (Appeal No. 04-18-00001-CV), seeking a writ of injunction and requesting this Court to determine whether Shopoff's filing of its net worth affidavit and a cash deposit was sufficient to stay execution of the judgment pending determination of the adequacy of the supersedeas deposit.

The next day, on January 3, 2018, in Appeal No. 04-17-00241-CV (Shopoff's appeal from the trial court's judgment), this court issued an opinion concluding that $900 of the escrow money on deposit with First American should have been distributed to Shopoff. Thus, this Court modified the trial court's judgment to include $900 that was erroneously not distributed to Shopoff and affirmed the judgment as modified. Pursuant to this modified judgment, Atrium remained entitled to $2,006,100.00 of the $2.5 million on deposit with First American. On January 18, 2018, in Appeal No. 04-17-00241-CV (Shopoff's appeal from the trial court's judgment), Shopoff filed a motion for rehearing. On January 22, 2018, this court denied the motion for rehearing.

On February 7, 2018, in the mandamus proceeding filed in this court (Appeal No. 04-18-00001-CV), this court issued an opinion, explaining that Shopoff's cash deposit, even if insufficient, superseded the trial court's judgment. Thus, this court conditionally granted Shopoff's petition for writ of mandamus. The trial court then vacated its December 22, 2017 order.

On February 14, 2018, Shopoff's attorney sent a letter to Atrium's attorney and attached a "Tender," along with a proposed Agreed Order directing the trial court clerk to pay Atrium the sum contemplated by this court's modified judgment in Appeal No. 04-17-00241-CV. On March 5, 2018, Atrium filed in the trial court a "Motion to Reconvene Hearing on Motion to Require

---

[4] Shopoff complied with the trial court's December 22, 2017 order by filing releases of the lis pendens on January 4, 2018.

Supersedeas, and Motion to Set, Increase, or Modify Supersedeas." In its motion, Atrium complained that Shopoff would not indicate whether it intended to appeal this Court's decision in Appeal No. 04-17-00241-CV to the Supreme Court and argued it was harmed by Shopoff's appeals. In fact, Shopoff did not file a petition for review with the Texas Supreme Court; thus, the mandate in Appeal No. 04-17-00241-CV issued on April 4, 2018.

Meanwhile, on January 12, 2018, days after this court's opinion in Appeal No. 04-17-00241-CV (Shopoff's appeal from the trial court's judgment) was issued, First American filed an interpleader action in the trial court, alleging that it was holding funds in escrow that were in dispute. First American alleged that "[a]s an innocent stakeholder," it was entitled "to interplead those funds into the registry of the court." Naming Shopoff and Atrium as defendants, First American asked the trial court to sign an order (1) accepting the tender of $2.5 million into the registry of the court, (2) discharging First American from all liability to the defendants with regard to the Purchase and Sale Agreement, and (3) dismissing First American from the suit.

On March 4, 2018, Atrium filed a counter-claim against First American and a cross-claim against Shopoff.[5] Atrium alleged that Shopoff, together with First American, had refused to comply with the trial court's judgment during the period of time it had not been superseded (i.e., from April 3, 2017 to November 28, 2017), which caused substantial damage to Atrium. Atrium further alleged that Shopoff had actually solicited, encouraged, directed, aided and attempted to aid First American to breach its fiduciary duties to Atrium. Atrium also alleged that Shopoff had engaged in a conspiracy with First American to breach First American's fiduciary duties. Alternatively, Atrium alleged that Shopoff was vicariously liable for First American's conduct by aiding and abetting First American.

---

[5] Atrium filed an amended pleading immediately before the hearing on Shopoff's motion to dismiss. Both parties agree that this amended pleading is not relevant to the instant appeal.

In response to the lawsuit, on May 4, 2018, Shopoff filed an "Anti-SLAPP Motion to Dismiss" pursuant to the TCPA. Shopoff argued Atrium's theory of participatory liability was based on an email Shopoff's attorney had sent to First American, informing First American that the arbitration award would be "challenged in Sta[t]e District Court" and directing First American to "not release any funds until you have a final, nonappealable [judgment] from a court of last resort." Thus, Shopoff argued the TCPA applied because Atrium's claims against it related to Shopoff's right to petition. Further, Shopoff argued that Atrium cannot meet its burden of showing a prima facie case on the element of damages because its claims are barred by the economic loss rule.[6] On July 18, 2018, the trial court denied Shopoff's motion to dismiss pursuant to the TCPA. Shopoff then filed this accelerated appeal.

## MOTION TO DISMISS UNDER THE TEXAS CITIZENS PARTICIPATION ACT

The TCPA's stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. In an aim to fulfill this purpose, the TCPA provides for dismissal of a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" unless the plaintiff establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* §§ 27.003(a), 27.005(c). "Legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id*. § 27.001(6). This

---

[6] As explained fully later, the "economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

"broad definition appears to encompass any procedural vehicle for the vindication of a legal claim." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 8 (Tex. 2018) (citation omitted).

A party moving for dismissal under the TCPA has the initial burden of showing by a preponderance of the evidence that the legal action "is based on, relates to, or is in response to the party's exercise" of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(b); *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the respondent. *See S & S*, 564 S.W.3d at 847. The respondent's claims against the movant will be dismissed unless the respondent can "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see S & S*, 564 S.W.3d at 847. The supreme court has explained that "a prima facie case is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *S & S*, 564 S.W.3d at 847 (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). "A finding that [the respondent] has met his TCPA burden does not establish that his allegations are true." *West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019).

If the respondent satisfies his burden, then the burden shifts back to the movant to establish "by a preponderance of the evidence each essential element of a valid defense" to the respondent's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). If the movant satisfies this burden, then the trial court must dismiss the legal action. *Id.*

In determining whether the parties have met their respective burdens, the trial court does not hear live testimony; the TCPA directs courts to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The supreme court has "recently observed that the pleadings are 'the best and all-sufficient

evidence of the nature of the action.'" *West*, 573 S.W.3d at 242 n.8 (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)).

An appellate court reviews issues regarding interpretation of the TCPA de novo. *S & S*, 564 S.W.3d at 847.

The parties dispute whether the TCPA applies to the underlying claims brought by Atrium against Shopoff. Shopoff emphasizes that pursuant to the TCPA, the legal action need merely to "relate[] to . . . a party's exercise of the . . . right to petition." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). And, the TCPA defines the "exercise of the right to petition" to include "a communication in *or pertaining to* . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i) (emphasis added). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual or electronic." *Id.* § 27.001(1).

Shopoff points to the allegations in Atrium's counterclaim and cross-claim regarding the email sent by Shopoff's counsel to the escrow officer. Shopoff argues this email is one of the alleged wrongful acts that form the basis of Atrium's lawsuit against Shopoff, and because the email was a communication relating to a judicial proceeding, the TCPA applies to Atrium's claims. In response, Atrium argues the email does not relate to the exercise of Shopoff's right to petition because (1) it was a communication made "to a stranger to the suit"; (2) it was "not a part of taking an appeal or superseding the judgment" and was "not otherwise pertinent to seeking any relief by Shopoff"; and (3) it was not the sole basis for Atrium's claims.

*A. Facts Alleged in Atrium's Cross-Claim and Counterclaim*

In its counterclaim and cross-claim, Atrium described the "nature of [its] suit" as "a suit for breach of an escrow agreement and breach of fiduciary duties and for misapplication of fiduciary property, and for conspiracy and participatory liability amongst" First American and Shopoff. In the "facts" section, the counterclaim and cross-claim recited facts surrounding the

failed real estate closing in February 2016, the arbitration proceeding, the April 12, 2017 final judgment confirming the arbitration award, the delay in Shopoff superseding the trial court's final judgment, and the subsequent appeal. With respect to the email sent by Shopoff's attorney to the escrow agent at First American, Atrium's counter-claim and cross-claim alleged the following facts:

1. On April 3, 2017, days after the arbitrators issued their award, Atrium's counsel, David Conoly, wrote to Ryan Hahn, an escrow officer with First American, and asked that First American immediately comply with the arbitrators' award by transferring $2,006,100 to Atrium's bank account.

2. On April 4, 2017, George Slade, an attorney for Shopoff, emailed Ryan Hahn the following: "Ryan, that award will be challenged in Sta[t]e District Court. Do not release any funds until you have a final, nonappealable judgment from a court of last resort."

3. "Moments later, Ryan Hahn wrote to David Conoly" the following: "We have been advised by counsel for Shopoff that the arbitration award will be challenged and, as such, we are not in a position to release the funds at this time."

4. "Unquestionably Mr. Hahn did not consult with counsel for [First American] before making this determination minutes after Slade's email."

5. First American and Shopoff "did not intend that their conduct be limited only to the legal and had no need for legal advice." First American "obeyed Shopoff, intentionally and recklessly, regardless of what is legal."

6. Shopoff and First American "engaged in a concerted effort to frustrate [Atrium]'s efforts to obtain the escrow funds to which it is entitled under the final unsuperseded judgment in order to be of financial assistance to Shopoff."

7. "Shopoff asked [First American] *not* to release the funds in escrow as ordered by the Court, and [First American] obliged in violation of a legal duty to [Atrium], ostensibly because the judgment was on appeal, though it had not even been superseded." (emphasis in original). "However, [First American] was obligated to pay the funds to [Atrium], and Shopoff was obligated to comply with the award and judgment at all times when the judgment was not superseded." "The judgment was never even arguably superseded until" November 29, 2017.

8. "As a result of Shopoff's and [First American]'s refusals to comply with the final judgment, [Atrium] has suffered tremendous damages." "Specifically, as Shopoff and [First American] knew, the Copperfield Square property's loan was going to mature on June 1, 2016."

Also in the "facts" section, the counterclaim and cross-claim alleged that during this first lawsuit, Shopoff filed notices of lis pendens relating to the real estate properties at issue:

> By filing lis pendens on [Atrium's] properties in March 2016, Shopoff ensured that [Atrium] would be driven into a default and foreclosure position on [one of Atrium's properties, Copperfield] once the [Copperfield] loan matured. By failing to comply with the [purchase and sale] agreement and the unsuperseded [arbitrators'] award, [First American] ensured Shopoff would be successful in driving the loan into default. This is exactly what happened.

Atrium alleged it accrued hundreds of thousands of dollars in refinancing the loan on the Copperfield property and that because of the lis pendens on file and the pending appeal, "many potential buyers for the properties" had been "frightened off."

### A. Causes of Action Alleged in Atrium's Cross-Claim and Counterclaim

Atrium's cross-claim and counterclaim then alleged three causes of action: breach of contract, breach of fiduciary duty/misapplication of fiduciary property, and "participatory liability." With regard to breach of contract, the counterclaim and cross-claim alleged that Atrium and First American had "entered into a valid and enforceable contract whereby [First American] was to act as escrow agent relating to the Purchase and Sale Agreement [between Atrium and Shopoff] and to release the funds to the proper person at the appropriate time." First American allegedly breached its contract with Atrium to act as a proper escrow agent because a "final judgment ha[d] been rendered by the Bexar County District Court ordering Shopoff and [First American] to release the escrow funds, and Shopoff and [First American] both refused to comply, though they are both bound by the contracts for sale of the various properties." This breach allegedly caused Atrium "substantial damages, including incurring substantial attorney's fees."

With regard to breach of fiduciary duty/misapplication of fiduciary property, Atrium's counterclaim and cross-claim alleged that First American, as the escrow agent, owed "fiduciary duties to each party to the contract." Atrium alleged First American owed a duty to Atrium "to

release the escrow funds as ordered" by the final judgment and "breached this duty by refusing to release the funds required during periods when the judgment was not superseded." First American allegedly did "so at the direction of Shopoff, without any legal justification, and has demonstrated that it is in legion with Shopoff, and only Shopoff, in this transaction." According to the allegations, First American thus "misapplied the fiduciary property by refusing to release it to its rightful owner," Atrium, which in turn "caused [Atrium] substantial damages, including the substantial monetary losses and expenditures incurred when Copperfield Square was faced with a note maturity and was nearly foreclosed." Atrium alleged that if First American had "paid out the escrow money when it was ordered to do so by the arbitration panel and then the court, [Atrium] would have had the funds necessary to pay the matured note on Copperfield Square and would have avoided all of the expenses associated with that debacle." Atrium also alleged that First American was

> liable for knowingly participating in Shopoff's scheme to keep the escrow money tied up for as long as possible, with the intention of financially harming [Atrium]. After all, Mr. Shopoff admitted that he does not care about the damages he is causing to [Atrium] by not complying with the final judgment and removing the *lis pendens* and instructing [First American] to release the escrow funds. And [First American] has acceded to Shopoff's every request, even as it owes a fiduciary obligation to [Atrium].

Thus, Atrium alleged that First American had "committed its conduct intentionally, knowingly, or recklessly misapplying the property it holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held."

With regard to Shopoff, Atrium alleged Shopoff had "participatory liability":

1. "Shopoff, acting with the kind of intent required for the offense of misapplication of fiduciary property, is responsible for the conduct of [First American] because with such intent it actually solicited, encouraged, directed, aided, or attempted to aid [First American] to commit the offense."

2.  First American "aided and abetted the conduct of Shopoff, and complied with the request of Shopoff, for its own financial gain, and for the financial gain and to render assistance to Shopoff, without legal justification and in violation of its fiduciary duty."

3.  "Shopoff and [First American] engaged in a conspiracy to commit the conduct described herein."

4.  "Alternatively, Shopoff aided and abetted [First American] and is vicariously liable for [First American]'s conduct."

Thus, Atrium's cross-claim and counterclaim alleged that Shopoff (1) conspired with First American and (2) "aided and abetted" First American to breach its fiduciary duties to Atrium and misapply fiduciary property. As alleged by Atrium, the facts that form the basis for Shopoff's liability under these claims are the allegations surrounding the email sent by Shopoff's attorney to the escrow agent at First American.[7]

### B.  Application of the TCPA

In arguing that the TCPA does not apply to its claims, Atrium contends that communications or actions taken outside of litigation do not implicate the right to petition. Atrium then cites *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280 (Tex. App.—Dallas 2015, pet. denied), as an example. In *Tervita*, the Dallas Court of Appeals considered whether an injured employee's lawsuit was related to his employer's right to petition. *Id.* at 282. After prevailing at the workers' compensation commission on his workers' compensation claim, the employee sued his employer, the workers' compensation insurance carrier, and two individual adjusters for violations of the Texas Labor Code, negligent misrepresentation, and conspiracy. *Id.* In response, his employer filed

---

[7] As noted previously, Atrium's cross-claim and counterclaim also alleged that Shopoff failed to release lis pendens on the properties at issue at a time when the judgment was not superseded. After reviewing the entire pleading, we agree with Shopoff that this allegation does not form the basis *for Shopoff's liability* against Atrium; there is no allegation relating to how Shopoff's failure to release lis pendens breached any fiduciary duty owed to Atrium. *See In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex. 2015) (explaining that once TCPA is implicated, "mere notice pleading— that is, general allegations that merely recite the elements of a cause of action—will not suffice" and that "[i]nstead, a plaintiff must provide enough detail to show the factual basis for its claim"). As pled in its breach of fiduciary duty claim, this allegation that Shopoff failed to release lis pendens instead related to damages allegedly suffered by Atrium.

a motion to dismiss under the TCPA, arguing his suit was based on the employer's constitutional rights to associate with the insurance carrier and to petition the workers' compensation commission. *Id.*

The employee's claims under the Labor Code alleged that the employer had discriminated against him by (1) creating a hostile work environment; (2) representing to him that he was "not entitled to pursue" workers' compensation benefits; (3) presenting false testimony during the claim process; and (4) terminating his employment. *Id.* at 283. With regard to his negligent misrepresentation claim, the employee alleged that his employer's "above described representations" were "false and intended for the guidance of [the employee] in his business, namely his decision to secure" workers' compensation benefits. *Id.* The employee alleged he suffered pecuniary loss as a result of his reliance on his employer's representations. *Id.* As for the employee's conspiracy claim, he alleged his employer and the insurance carrier "combined to have a meeting of the minds for the purpose of providing testimony and evidence against [the employee] for the unlawful purpose of denying" workers' compensation benefits. *Id.* The employee alleged that his employer "provided testimony in the process of [his] claim and at the contested case hearing under oath that [the employer and insurance carrier] knew at the time was false." *Id.* The employee alleged he suffered injury and damages as a result of this conspiracy. *Id.*

The court of appeals held that although the employer moved to dismiss all of the employee's claims under the TCPA, only the employee's conspiracy claim and one of his claims for unemployment discrimination were based on the employer's participation in the contested case hearing before the workers' compensation commission. *Id.* The court held those two claims related to the employer's exercise of its right to petition because the employee's allegations related to alleged false testimony from the employer's representative at a hearing. *Id.* at 284. The court reasoned that although the employee had not sought damages relating to the representative's

testimony alone, the employee did claim his employer discriminated against him by, among other acts, presenting the representative's testimony at the hearing. *Id.* The court of appeals concluded the representative's testimony was a "communication" "in or pertaining to" a proceeding before the workers' compensation commission. *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (4)). Therefore, the employee's employment discrimination claim based on his employer presenting false testimony and his conspiracy claim of knowingly providing false testimony were in part "based on, relate[d] to, or [were] in response to" this communication. *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.003). The TCPA was applicable to these claims. *Id.*

However, the court of appeals concluded the employer had not established by a preponderance of the evidence that the employee's remaining employment discrimination claims, which were based on the employer creating a hostile work environment, misrepresenting to him the availability of workers' compensation benefits, and terminating his employment, were related to the exercise of the employer's right to petition. *Id.* at 286-87. In making this conclusion, the court noted that the employee's allegations were based on the employer's "actions and statements outside of the [workers' compensation] proceeding." *Id.* at 287. Atrium relies on this statement for the proposition that any "communications or actions taken outside of actual litigation" "do not implicate the right to petition." We do not believe *Tervita* and other cases relied on by Atrium can be read this broadly. Instead, we construe *Tervita* to stand for the proposition that alleged conduct having no relation to a party's right to petition does not implicate the TCPA.

Unlike in *Tervita*, the email sent by Shopoff's attorney to the escrow agent at First American was a communication directly related to the pending litigation between Shopoff and Atrium. Through the email, Shopoff communicated to First American that it should not release the escrow funds because Shopoff was going to invoke its right to petition by filing an appeal. Under

the TCPA, Shopoff's email fits under the definition of exercising the right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4) ("'Exercise of the right to petition' means . . . a communication in or *pertaining to* . . . a judicial proceeding . . . .") (emphasis added); *id.* § 27.001(1) ("'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, *or electronic*.") (emphasis added). Atrium then sued Shopoff and, as a basis for its claims, alleged that because Shopoff emailed First American and communicated to First American that it should not release the funds because Shopoff was going to appeal, Atrium was harmed. Further, although Atrium argues that the email in question was a "communication to a stranger to the suit, not 'in' the suit," First American was not a "stranger" to the litigation, but an interested party. It was the entity holding the escrow money directly at issue in the litigation. Thus, we conclude that Atrium's claims *relate to* Shopoff's exercise of its right to petition.[8] *See Ghrist v. MBH Real Estate LLC*, No. 02-17-00411-CV, 2018 WL 3060331, at *4 (Tex. App.—Fort Worth 2018, no pet.) (holding that because "on its face, the letter that was the basis of the appellee's suit was written about a matter connected with a lawsuit pending in the district court in Tarrant County," appellants met their burden of showing appellees' claim related to appellant's right to petition).

Finally, we note that Atrium has also argued that Shopoff's email was "baseless and a sham." Atrium contends that "[r]egarding the underlying first lawsuit, no reasonable litigant could have reasonably expected success on the merits." Atrium then admits that the "TCPA does not

---

[8] We note that Atrium argues the email was "made without legal right because Shopoff has no right to avoid enforcement of the judgment or to direct [First American] to assist it to avoid compliance with the mandatory orders in the judgment." According to Atrium, "[b]y definition, the right to petition does not include acts that are tortious or illegal, or solicitations to avoid compliance with a mandatory injunction in an enforceable final judgment. Such tortious and illegal acts are therefore not subject to the TCPA's protections." Atrium cites no authority for this proposition. *See* TEX. R. APP. P. 38.1(i) (requiring appellate brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). The TCPA, however, does specifically define "exercise of the right to petition," and its definition does not mention illegal or tortious actions being excluded from the definition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4).

explicitly exclude lawsuits that constitute sham petitioning from the 'exercise of the right to petition' definition," but argues for the creation of such a limitation. We decline to do so.

The United States Supreme Court has held that the right to petition government for redress of grievances under the First Amendment encompasses a right to access the courts. *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 741 (1983). However, in certain contexts, the Supreme Court has limited this right to petition to exclude "sham" petitioning—that is, petitioning "not genuinely aimed at procuring favorable governmental action at all" but instead aimed at using "the governmental *process*, as opposed to the *outcome* of that process, as an anticompetitive weapon" by, for example, harassing, increasing costs for, or otherwise harming the opposing party as an end in itself. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original) (citations omitted). In determining whether a lawsuit amounts to sham petitioning, the Supreme Court has applied a two-part analysis: (1) the court considers whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) if the lawsuit is objectively baseless, then the court determines whether the baseless lawsuit conceals an attempt to harm a rival directly through the process itself as opposed to the outcome of that process. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

While the right to petition under the United States Constitution has been interpreted through longstanding jurisprudence, the Texas Legislature, in enacting the TCPA, did not refer to this jurisprudence and made no explicit mention of sham petitioning. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-27.011. Instead, the Legislature specifically defined the "[e]xercise of the right to petition" in the TCPA to mean any of the following:

> (A) a communication in or pertaining to:
>     (i) a judicial proceeding;

(ii) an official proceeding, other than a judicial proceeding, to administer the law;

(iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

(iv) a legislative proceeding, including a proceeding of a legislative committee;

(v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

(vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

(vii) a proceeding of the governing body of any political subdivision of this state;

(viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

(ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4).

The Texas Supreme Court has repeatedly instructed that "[w]hen construing a statute, [a court's] primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "To discern that intent, [a court] begin[s] with the statute's words." *Id.* Thus, "[i]f a statute uses a term with a particular meaning or assigns a particular meaning to a term, [a court is] bound by the statutory usage." *Id*. Given that the Legislature explicitly defined the "exercise of the right to petition" and did not see fit to include an exception for sham petitioning, we decline to hold that such an exception exists.

*C. Did Atrium establish by clear and specific evidence a prima facie case for each essential element of its claims?*

Having determined that Shopoff met its burden of showing the TCPA applies to Atrium's claims, we must now consider whether Atrium established by clear and specific evidence a prima facie case for each essential element of its claims against Shopoff. Shopoff argues that Atrium cannot make this showing because all of its claims are derivative of its claims against First American. That is, Atrium alleged Shopoff (1) conspired with First American and (2) "aided and abetted"[9] First American to breach its fiduciary duties to Atrium and misapply fiduciary property.[10] Atrium did not allege that Shopoff owed its own fiduciary duty to Atrium. Shopoff emphasizes that because a suit for conspiracy cannot proceed without an underlying tort, Atrium had to show (1) the underlying fiduciary breach by First American, and (2) a basis on which Shopoff could be held liable as a participant or conspirator. Shopoff argues Atrium cannot meet this burden because "its contract claims and its tort claims against First American all derive from the same alleged breach: the failure to make timely disbursement of the previously-disputed escrow funds." According to Shopoff, because Atrium has not shown an independent injury outside of the alleged untimely payment, it cannot prove damages under the economic loss rule.

"[C]ivil conspiracy is not an independent tort." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). It "is a theory of vicarious liability"; "a lawsuit alleging a civil conspiracy that committed some intentional tort is still a 'suit for' that tort." *Id.* Thus, a party must

---

[9] It is not clear whether Texas recognizes the theory of participatory liability of "aiding and abetting" separately from a theory of civil conspiracy. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *Rio Grande H2O Guardian v. Robert Muller Family P'ship*, No. 04-13-00441-CV, 2014 WL 309776, at *4 n.3 (Tex. App.—San Antonio 2014, no pet.), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). Even if aiding and abetting is a separate theory of liability, it does not matter for purposes of our analysis because aiding and abetting would also be purely derivative and would require proof of the underlying tort.

[10] Misapplication of fiduciary property is a form of breach of fiduciary duty that permits exemplary damages under certain circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c)(10).

prove the underlying tort. *See id.* Additionally, to hold a party vicariously liable under a theory of civil conspiracy, a party must show the following: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) *damages as the proximate result*." *Id.* at 141 (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)) (emphasis added). The "damages element refers not to the entire conspiracy itself but to some tortious act committed by a co-conspirator pursuant to the conspiracy." *Id.* at 142.

With respect to the element of damages, the economic loss rule is not an affirmative defense; it "is a consideration *in measuring damages*." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007) (emphasis added); *see also* Jim Wren, *Applying the Economic Loss Rule in Texas*, 64 BAYLOR L. REV. 204, 208 (2012) (explaining that the economic loss rule "is not an affirmative defense that must be pleaded" but is "instead, a statement or legal consideration of what is and is not to be considered as part of the proper measure of damages in a case to which it applies"). Thus, "the economic loss rule may be raised by the defendant to simply point out *a deficiency in the plaintiff's proof of damages*, without the necessity of prior pleading." Jim Wren, *Applying the Economic Loss Rule in Texas*, 64 BAYLOR L. REV. 204, 208 (2012) (emphasis added); *see Equistar*, 240 S.W.3d at 868. Furthermore, as the economic loss rule is a legal consideration of what should and should not be part of the proper measure of damages, the rule is applicable to whether Atrium has met its prima facie case on the element of damages with respect to its claims against Shopoff for conspiracy to breach the fiduciary duty owed to Atrium and for conspiracy to breach the escrow contract. *See Equistar*, 240 S.W.3d at 868.

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445

S.W.3d 716, 718 (Tex. 2014); *see also LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 241-42 (Tex. 2014); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011). However, it does not prevent economic losses from being "recoverable under a variety of intentional tort theories *absent a contractual obligation.*" *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (emphasis added). Further, "[e]ven if the matter in dispute is the subject of a contract, a party may elect a recovery in tort *if the duty breached stands independent from the contractual undertaking*, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Id.* (citing *Chapman*, 445 S.W.3d at 718) (emphasis added). Thus, in deciding whether the economic loss rule applies to Atrium's claims, we look to the source of the alleged duty and the nature of the claimed injury. *See id.*; *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (explaining that "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both" and courts look to the "nature of the injury" in determining "which duty or duties are breached" and whether the cause of action "sounds in contract alone").

In making this determination, we do not look to "the manner in which" a cause of action was pled, but instead "look *to the substance* of the cause of action." *Jim Walter Homes*, 711 S.W.2d at 617-18 (emphasis added). Here, the underlying claims brought by Atrium are breach of fiduciary duty and misapplication of fiduciary property. Atrium generally alleged First American owed the following duties: (1) "the duty of loyalty"; (2) "the duty to make full disclosure"; and (3) "the duty to exercise a high degree of care to conserve the money and pay it only to the people entitled to receive it in accordance with the agreement." The substance of the alleged breach by First American in relation to those duties was First American "refusing to release the funds required during periods when the judgment was not superseded." This alone might show a breach of a contractual duty, but it is insufficient to raise breach of fiduciary duty or misapplication of

fiduciary funds. Further, nothing in Atrium's response to Shopoff's motion to dismiss shows a breach of a duty separate from the alleged failure to comply with the contractual agreement. *See Stauffacher v. Coadum Capital Fund 1, LLC*, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding economic loss rule applied to actions brought by investment fund against joint venturer for breach of joint venture agreement and breach of fiduciary duty because even though there was evidence to show a breach of fiduciary duty, there was no evidence to show how the investment fund was damaged "specifically by" the joint venturer's breach of fiduciary duty separate from his failure to comply with the joint-venture agreement); *Fish v. Tex. Legislative Serv.*, No. 03–10–00358–CV, 2012 WL 254613, at *14-*15 (Tex. App.—Austin 2012, no pet.) ("Although we cannot say that the economic loss rule never allows recovery of tort damages under a breach-of-fiduciary-duty theory solely because there is contractual relationship between the parties, in this case we believe that the economic loss rule applies because the damages alleged arise only from the nonperformance of duties governed by the partnership agreement" and "the nature of the injury in this case emanates from nonperformance of the partnership agreement itself and is thus more appropriately characterized as a breach-of-contract claim."); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 467 (Tex. App.—San Antonio 2003, no pet.) (holding economic loss rule applies to breach of fiduciary claims brought by property owner, who entered into an agreement to allow an attorney to use the owner's real property as collateral for attorney to write bail bonds, because "the duties allegedly breached" were created by the unenforceable contract and the alleged injury stemmed from the unenforceable contract). Thus, under the facts presented by the record in this appeal, we conclude the economic loss rule applies to Atrium's claims and is a consideration in how Atrium can show proof of the element of damages. *See Equistar*, 240 S.W.3d at 868 (explaining that the economic loss rule is not an affirmative defense but "is a consideration *in measuring damages*") (emphasis added); *see also* Jim Wren, *Applying the*

*Economic Loss Rule in Texas*, 64 BAYLOR L. REV. 204, 208 (2012) (explaining that the economic loss rule is "a statement or legal consideration of what is and is not to be considered as part of the proper measure of damages in a case to which it applies").

Because Atrium has not met its burden of establishing by clear and specific evidence a prima facie case for the element of damages, we conclude the trial court erred in denying Shopoff's motion to dismiss pursuant to the TCPA.

### WAIVER

Finally, Atrium argues that Shopoff waived its right to assert its motion to dismiss under the TCPA because it was not timely filed. The TCPA provides that a motion to dismiss must be filed "not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b). Atrium does not dispute that Shopoff filed its motion to dismiss within sixty days after the date of service in the underlying lawsuit. Instead, Atrium argues that the underlying legal action "arises out of and is based on identical facts, actions and communications" as a former lawsuit (the post-judgment legal action for sanctions and contempt asserted in the original lawsuit). Thus, Atrium claims a motion to dismiss under the TCPA had to be filed within sixty days from the date of service in that original action. Atrium cites no legal authority for this argument. *See* TEX. R. APP. P. 38.1(i). And, in considering the plain language of section 27.003, we find no support for the assertion that the sixty-day deadline for filing a motion to dismiss under the TCPA would apply to an earlier-filed lawsuit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003.

### CONCLUSION

For the foregoing reasons, we hold the TCPA applies because Atrium's legal action is related to Shopoff's exercise of its right to petition. Thus, with respect to Atrium's claims against Shopoff, the burden shifted to Atrium to establish by clear and specific evidence a prima facie case

for the element of damages. However, because the economic loss rule applies to Atrium's claims, Atrium has not established a prima facie case for damages, and the trial court erred in denying Shopoff's motion to dismiss. Therefore, we reverse the trial court's order and render judgment that the following claims brought by Atrium against Shopoff are dismissed: (1) conspiracy to breach a fiduciary duty owed by First American to Atrium; (2) conspiracy to misapply fiduciary property; (3) aiding and abetting First American to breach its fiduciary duty; and (4) aiding and abetting misapplication of fiduciary property.

Liza A. Rodriguez, Justice